FILED IN CLERKS OFFICE 2020 SEP 29 AM 10: 41 U.S. DISTRICT COURT DISTRICT OF MASS.

JODY ELLIOTT LMHC

Plaintiff

v,

OFFICER JAMES JOHNSON

Salem Police Department

Defendant

## VERIFIED COMPLAINT AND DEMAND FOR A JURY

## FEDERAL JURISTRICTION

Plaintiff is filing this complaint under:

**42 U.S.C. 1983  Civil Action for Deprivation of Rights**

Violation of Plaintiffs 4th Amendment Right:

Officer James Johnson violated Plaintiff's civil right to unreasonable search and SEIZURE.

California v Hodarid   Supreme Court:

"The word Seizure readily bears the meaning of laying on of hands or application of physical force to restrain movement."

Excessive Force:  Graham v Connor  490 US 386  1989:

"..reasonableness of a seizure requires a careful balancing of the nature and quality of the intrusion on the individuals 4th Amendment interests against the countervailing governmental interest at stake."

## REPRESENTATION

Plaintiff is filing this complaint pro se and her family is only involved in this complaint as witnesses.

## COMPLAINT

**HISTORY;**   Two days prior to the incident (August 27th 2019) Plaintiff suffered a low blood sugar episode that left her unconscious.  Plaintiffs daughter tried to provide the needed sugar to Plaintiff (Boost) but Plaintiff could not drink it. Plaintiffs daughter next called 911 and a medical team arrived within minutes. The medical personal reacted quickly, injecting Plaintiff with a sugar substance that revived her. Plaintiff became aware and thanked the personal for helping her. While Plaintiff was unconscious the medical team informed her daughter that she should not try to revive her mother while she was losing consciousness and to immediately call 911.

**HISTORY:**  Plaintiff filed a lawsuit in Federal Court (2016) against the Salem Police Department for violating her right to equal justice under the law.  Defendant Officer James Johnson was involved in that lawsuit.

**4th Amendment Violation Incident:**  Early morning  Saturday August 29th 2019 Plaintiffs daughter called 911 fearful that her mother was experiencing low blood sugar . Two days prior Plaintiffs daughter had found Plaintiff close to unconsciousness and in need of medical support. Plaintiffs daughter was still recovering from the traumatic event and was overly cautious. When she witnessed her mother awake very early and seemingly confused she immediately called 911.  When Plaintiffs daughter informed Plaintiff she had called 911 Plaintiff informed her that it was unnecessary as Plaintiff was fine and on her way downstairs to test her sugar.

**Note:** Plaintiff lives on a 3 level condo. Bedrooms are on the 3rd level and the second level is the kitchen and living area. The 1st level is the entrance into the home.

**Note**: Plaintiffs daughter is her **MEDICAL PROXY**. When Plaintiff suffered a heart attack in 2012 she signed the required documentation to have her daughter make medical decisions for her.

While Plaintiff was in the kitchen testing her blood sugar levels the medical team arrived; along with Salem Police Officer James Johnson.

Officer Johnson is assigned to Plaintiffs neighborhood and Plaintiffs has crossed paths with him since 2012. Plaintiffs has made it clear to Officer Johnson that she does not trust him and does not want him in her home for any reason.

When the Medical Team and Officer Johnson arrived Plaintiffs daughter went outside to greet them and explain that it was a "false alarm" and that Plaintiff was OK. Officer Johnson informed Plaintiffs daughter that "that's not the way it works" and that the medical team would have to verify for themselves that Plaintiff was OK. Officer Johnson then informed her daughter that she could not be involved in the evaluation and **must remove herself** by going to her room on the upper level. Plaintiffs daughter, being the **obedient individual** she is, complied with Officer Johnsons order and removed herself.

OFFICER JOHNSON INTENTIONALLY REMOVED PLAINTIFFS MEDICAL PROXY FROM THE ENVIRONMENT and entered Plaintiffs home.

Plaintiff witnessed her daughter entering the home and walking up to the next level and then witnessed Officer Johnson enter her home with a medical team behind him. Plaintiff immediately became uncomfortable, reminding Officer Johnson that he should not be in her home. Officer Johnson informed her that he had to "clear" the situation. Plaintiff informed Officer Johnson that she was OK and that there was NO NEED for any medial attention at this time. Plaintiff looked past Officer Johnson and apologized to the medical personal for the call, explaining that her daughter was overly cautious due to the event two days earlier. The medical personal seemed OK with the explanation. Officer Johnson was not. Officer Johnson informed Plaintiff he could

NOT LEAVE until the medical personal took a sample of Plaintiffs blood. Plaintiff informed Officer Johnson that she had tested her blood, and although a little low, she could fix that by sitting for a minute and drinking a Boost.  Officer Johnson again informed Plaintiff that he would not leave unless the medical team took a sample of her blood. At this time Plaintiff was getting frustrated and informed Officer Johnson that it was an INVASION OF HER PRIVACY to be forced to give blood when she was quite able to treat herself.  Again, Officer Johnson stated he would not leave until Plaintiff provided a blood sample.

**Note:**  In Officer Johnsons report Plaintiffs refusal to provide a blood sample is recorded as "uncooperative, loud, belligerent, etc"

Finally, Plaintiff agreed to give the medical team a sample of her blood so they would leave. The result was low blood sugar, which Plaintiff was aware of as she had tested her blood earlier. She was hoping they would leave quickly so she could sit and drink a boost and fix the problem. When the reading came back low the medical professional who took it explained to Plaintiff that it was low. Plaintiff agreed and said she would drink a Boost and be fine. Officer Johnson who overheard the exchange said Plaintiff had to give another sample. Why?

At this time Plaintiff was getting scared. She had (reluctantly) complied with Officer Johnsons demands but still he wouldn't leave her home. Plaintiff mentioned that she needed to drink her Boost to EMT David Manning but he looked to Officer Johnson for guidance.

Plaintiff next agreed to allow a second blood sample to be provided. Plaintiff was getting worried something was wrong and could not understand why she couldn't just sit and drink a Boost. The second blood sample came back low- but not the same as the earlier one- low blood sugars can vary a few points from test to test.

At that time the other EMT conversed privately with Officer Johnson. David Manning sat with Plaintiff in the kitchen waiting for instruction. David Manning was blocking plaintiffs access to the

refrigerator and the Boost. Plaintiff was afraid to ask him to move, the environment had become highly stressed.

The other EMT entered the Kitchen with a phone and said he was talking to a Doctor who was insisting Plaintiff go to the hospital. At that time Plaintiff asked where her daughter was. Plaintiffs daughter is her medical proxy and can speak with medical staff about Plaintiffs medical condition. No one would answer her question and Plaintiff spoke briefly with the doctor; acknowledging her low sugar, stating she could address it and stating she was upset about what was happening.

Plaintiff does not know what the EMT communicated to the Doctor. Plaintiff has requested all medical records from the hospital but there is no recording of the exchange with Doctor Whitledge.

After the call Officer Johnson appeared in Kitchen doorway and stated Plaintiff had to go to the hospital. Plaintiff replied NO, she would drink her boost and sit on the couch until her sugar goes up. Officer Johnson said NO, she was going to be transported to the hospital.

By this time Plaintiff was overwhelmed. Plaintiff stood up and entered the parlor to think about the best way to resolve this problem. Plaintiff attempted to close the parlor door. The EMT opened the door just as Plaintiff threw a pillow off the couch at the door to close it.

Next Officer Johnson entered the parlor and grabbed Plaintiffs arm and started to pull her to the door. Plaintiff, on instinct, pushed his hand away. Next Officer Johnson grabbed Plaintiffs right arm, twisted it up her back, and informed her she had just assaulted a Police Officer, and began to drag her out of the parlor. Plaintiff asked if she was being arrested for assault but Officer Johnson would not reply, just stating "if you continue to resist I will handcuff you."

Officer Johnson dragged Plaintiff to the stairwell that led outside. Plaintiff was fearful that she was being arrested and fearful that she would die. Plaintiff knew that Officer Johnson would place her in a cell and not allow her to have the sugar she needed to stay alive.

Acting out of fear Plaintiff grabbed hold of the stair post with he left hand and held on with all her will.  Officer Johnson pulled but could not release her. Officer Johnson pounded on her left arm to try and make her release it. **(Exhibit's 1, 2 and 3 Photos)** Plaintiff would not let go so Officer Johnson pushed her right arm, that was still pinned to her back, up to her neck. The pain was so great that Plaintiff screamed loudly. At that time Plaintiffs daughter came downstairs and witnessing the assault told officer Johnson to stop. He refused.

When Plaintiffs arm was free of the stair well she fell onto the stairs. Officer Johnson then kneeled on Plaintiffs back and slammed Plaintiffs face into the stairs; damaging her nose.

At that point Plaintiff gave up. Plaintiff was dragged face down the front stair well and place into Cataldo ambulance. EMT David Manning accompanied Plaintiff to the hospital. During the ride EMT David Manning kept telling Plaintiff " I didn't touch you"  Plaintiff was traumatized and yelling.

When she arrived at the Hospital Plaintiff was yelling. Plaintiff kept stating that she was assaulted.

The doctor who examined Plaintiff was kind considering the emotional state that Plaintiff was in. He asked her questions and asked if she was hurt. At that time Plaintiffs back was in a lot of pain and she informed the doctor but as the doctor approached Plaintiff was frightened and said not to come closer. Post trauma stress.

The doctor checked her blood sugar - which was low- but quickly allowed her to leave. The doctor determined that Plaintiff was cognitively able to treat herself and the hospital had no right to keep her against her will. Plaintiff left.

Hospital Report: **Exhibit 4:**  page 1

1. **Brought against her will**

2. **Restrained**

3. **Coherent**

**4. Concerned about being restrained by the police to come here and being injured as a result.**

**5. Does not demonstrate any suicidal ideation, homicidal ideation or DANGER TO HER SELF OR INABILITY TO CARE FOR HERSELF AT THIS TIME.**

page 3:

**6. she has intact mental state although she is emotionally excited and agitated about the way she was treated before coming here.**

**7. She wants to leave.......there is no acute reason to restrain her from doing this at this time.**

When Plaintiff returned home she DRANK HER BOOST and rested. A few hours later she went to the Salem Police Department to file a complaint on Officer Johnson. She met with a Senior Police Officer who checked with the front desk and records and stated there was no incident report filed. Plaintiff explained about Officer Johnson. The Officer informed her that she would have to return on Tuesday (Labor day weekend) and speak with Captain Kate Stevens. Following the assault Plaintiff was too sick to return to the Police Department on the scheduled Tuesday. Plaintiff returned on Thursday. At that time Captain Kate Stevens was still unavailable. Plaintiff checked with the Police record department and they did have an incident report filed by Officer Johnson. **(Exhibit 5)** This report must have been filed following Plaintiffs earlier visit. (Note) A few months later Captain Kate Stevens was demoted due to misconduct. Unrelated. The day of the assault Plaintiff returned home from the police station and that night became ill. She went to bed and began vomiting. For the next two days Plaintiff stayed in bed vomiting. (symptom of a head trauma) Due to the holiday Plaintiff could not go to her doctor and she would not return to the emergency ward due to the embarrassment of her previous visit. Two days after the assault the vomiting stopped. 2 weeks after the assault Plaintiffs nose was still painful, Plaintiff made an appointment with her Primary care Physician.

Sept 19th 2019 Two and a half weeks after the assault Plaintiff had her nose X-rayed. The X rays showed **(Exhibit 6)** that, although not broken, Plaintiff suffered trauma to her nose. When Plaintiff went to her Primary Care and explained about the assault and trauma her Primary Care Doctor did not believe her. When asked why the Doctor explained that Plaintiffs medical records reported that Plaintiff had assaulted a Police Officer as well as two EMT's. Officer Johnson had reported to the ambulance driver that Plaintiff had assaulted him and the EMT's.

Officer Johnson begins his police report claiming that "as in the past when emergency personnel are called to the residence for a valid reason the daughter tells us that our response in no longer needed." This is a **False statement** and Officer Johnson is placing blame on Plaintiff's daughter for calling.

Next Officer Johnson reports that Plaintiff was "uncooperative, loud, belligerent and used profane and insulting language. she expressed a dislike for police" This is **a false statement.** Although Plaintiff was resistant she did provide TWO blood samples and Plaintiff does not dislike the police, she fears Officer Johnson and has clearly informed him in the past not to involve himself in her affairs.

Officer Johnson reports that Dr. Whitledge was called. This occurred after 20 minutes of Officer Johnson and the EMT's being in Plaintiffs home. Plaintiff was not able to hear what information was conveyed to Dr. Whitelidge and Plaintiff was unaware that he had been called until an EMT brought the phone to her. Plaintiff spoke briefly to Dr. Whitledge, stating that she was upset and that the Doctor should speak with her Medical Proxy to gain a better understanding of the events. Officer Johnson did not allow this.

Next, Officer Johnson states that "Dr. Whitledge after speaking with Ms Elliott informed EMT Wilkins that he made a medical determination that she could not refuse further treatment

including transport to the hospital. This determination was made due to her extreme agitated state with him…and no way to confirm her blood sugar."

**Two problems with this statement.** First, Plaintiff had provided two blood samples to the EMT's so they were able to confirm her blood sugar.  Second, Plaintiffs daughter could have transported her to the hospital. Plaintiffs daughter has done this many times since 2012. Plaintiff does not believe that Dr. Whitledge **insisted that Plaintiff be transported by ambulance.** This decision put a financial hardship on Plaintiff exceeding $500.00 **(exhibit 7)**

Next, Officer Johnson states, " she also swung her arm towards him (EMT Wilkins) but did not make contact." This statement is **False.**  The only time Plaintiff became in close proxy to EMT Manning she was already restrained.

Officer Johnson continues " When EMT David Manning attempted to get her to go to the hospital she the hit him on his hand with an open hand." This is a **False Statement.**  EMT David Manning never entered the parlor or was near Plaintiff until he rode with her in the Ambulance and at that time Plaintiff was in restraints. During the ride EMT David Manning kept telling Plaintiff " I did not touch you"

Plaintiff will call both these EMT's as witnesses.

Next Officer Johnson states, " This OFC then proceeded to enter the room to prevent any further attacks on the EMTs or any other persons. Ms Elliott then assailed me by hitting me on my left arm with an open hand. "   Plaintiff did push away Officer Johnson's Hand when he grabbed her and began dragging her. Plaintiff states this was in Instinctual **Self-Defense.**

Next Officer Johnson states, "This OFC then assisted the EMT"S with Ms Elliott to the Ambulance."  The EMT's were not involved in bringing Plaintiff to the ambulance. They stood back and watched as Officer Johnson dragged Plaintiff, face down the stairs, with her right arm still pinned to her back.

Next Officer Johnson states, "The station was informed of her uncooperative and combative behavior." This is a **False Statement.** Plaintiff arrived at the Salem Police Station approx. 6 hours after the incident and the Senior Officer checked to see if Office Johnson had called anything in or if a report had been filed. The senior Officer stated there wasn't any record of the incident.

Plaintiff believes Officer Johnson's incident report was filed in response to Plaintiff going to the Salem Police Station to complain about the assault on her by Officer Johnson. If there is a recording, as Officer Johnson states there is, the Salem Police Department can provide it to Plaintiff and this Court.

Next Officer Johnson states "Handcuffs were not applied although MS Elliot was advised that this was an option." Officer Johnsons stating that Plaintiff assaulted him and stating that he was going to handcuff her was when Plaintiff came to the reasonable understanding that she was being arrested. Officer Johnson did not respond when Plaintiff asked if she was under arrest. Officer Johnson continues, "The only action or force used taken by this OFC was self defense....no injuries were reported by any medical or fire personnel."

Plaintiff suffered a Head and Face Injury. Severe damage to her left and right arms and injury to her back.

Officer Johnson states in his report: " Based on her erratic behavior and medical condition it's believed that there was no malicious intent involved in the assaults and batteries. The EMTS and this OFC at this time do not want to pursue and type of charges in court" This is a **True Statement.** All Plaintiff wanted to do was sit and drink her boost.

The Malice intent was by Officer Johnson.

**ARGUMENT**

Officer Johnson was acting in Bad Faith. He knew his behavior was unlawful and he knew he was violating Plaintiffs 4th Amendment. Plaintiff was in HER HOME, instructing Officer Johnson to Leave because there was no need for medical assistance and he refused to leave.

**US v Quezada 8th Cir. 2006**

Establishes

A Police Officer "had to have a reasonable belief that an emergency exists requiring his or her attention"

**Graham v Connor, Supreme Court 1989** established **Objective reasonless** :

"Our 4th Amendment jurisprudence has long recognized ... because the test of reasonableness under the 4th Amendment is not capable of precise definition of mechanical application - the tests proper application requires careful attention to the facts and circumstances of each particular case."

If a reasonable Police Officer had responded to the 911 call Plaintiff believes he would have acted differently.

1. It is **reasonable** for a Police Officer to accept Plaintiffs daughter's statement that she called 911 too quickly and that her mother was OK and did not need medical attention.

2. It is **reasonable** for a Police Officer to allow Plaintiffs daughter to accompany him while he verifies her statement.

3. It is **reasonable** for a Police Officer to accept Plaintiffs word that she is OK and does not need medical assistance at this time.

4. It is **reasonable** for a Police Officer to leave when he discovers there is no emergency, no one is in danger and if necessary there is someone in the home that can assist Plaintiff if she requires help; transport her for medical assistance, etc.

5. It is **reasonable** for a Police Officer to allow a medical team to direct his actions vs a Police Office directing the actions of the medical team.

If a **reasonable** Price Officer had responded to Plaintiffs daughters 911 call then Plaintiffs 4th Amendment rights would have been respected and she would not have suffered harm.

**Graham v Connor** mandates that the court determine if:

"the force was applied in a Good Faith effort to maintain and restore discipline or MALICIOUSLY AND SADISTICALLY FOR THE VERY PURPOSE OF CAUSING HARM."

**Qualified Immunity:**   Supreme Court Justice Samual Alito (2009) Pearson v Callahan:

"The need to hold Public Officials accountable when they exercise power irresponsibly and the need to shield officials from harassment distraction and liability when they preform their **reason ably**"

Officer Johnson's actions were knowingly unreasonable and held malicious intent. This court must hold him accountable, He is not entitled to Qualified Immunity.

## PREVIOUS LITIGATION

**Massachusetts Superior Court Department:  CivilAction:  19977CV)1299B**

Reluctantly Plaintiff  brought this complaint to State Court.

Officer Johnson submitted a rule 12 motion for summary judgement

Pursuit to M.G.L. 123  12  and 22:

"…in an emergency situation, if a physician, qualified psychologist, or qualified pediatric nurse… is not available, a police officer, who believes that failure to hospitalize a person would create a likelihood of serious harm by **REASON OF MENTAL ILLNESS**  may restrain such person and apply for hospitalization of such person."

Officer Johnsons Motion for Judgement:  **(Exhibit 8)**

**(pg 7)** " Here, Office Johnson had probable cause to believe that the Plaintiff was in serious danger when her daughter called 911 after finding Plaintiff **unconscious** due to her low blood sugar." This is a **False Statement** Plaintiff never lost Consciousness.

**(pg 7)** " Officer Johnson was also aware of the Plaintiff's **history of alleged mental illness**" **This is a False Statement.** There is no reasonable explanation of why Officer Johnson would believe Plaintiff was mentally ill.

**(p11)** "The Plaintiff is so litigious that she was actually enjoying from filing further pro se complaints in federal court"

This statement is true, but the case that is referenced has been in the Federal Appeals Court since February 2020 and this complaint is not directly related to the previous case; thus not restricted.

**(pg 12)** "That being said, the underlying reasons for enjoining the Plaintiff from fill-ing anymore pro se complaints in federal districts court equally apply here.

The rule 12 hearing was held via telephone on July 7th 2020.

Thomas Donohue, representing Officer Johnson, began the hearing by stating that Plaintiff had sued the Salem Police Department previously. (Thomas Donohue had been the legal representation in the stated case.) Thomas Donohue continued on to state that **the federal case centered around Plaintiff being mentally ill.**

This is a **False Statement.** The Federal Court never questioned Plaintiff's mental health status. The only reference to Mental Illness is one of the slanderous statements submitted as evidence.

(Case report **Exhibit 9).**

Since the state hearing Plaintiff has attempted to get a transcript to provide to this court. **(Exhibits 10, 11,12)** but due to the pandemic this task has been impossible. Plaintiff should be able to provide the transcript to this court in the future.

Judge Howe accepted the False Statements as truth and dismissed the case under MA law 123 12 and 22. **(Exhibit 13)**

Plaintiff is stating to this Federal Court that this State ruling is **unconstitutional.**

First, the ruling is based on false statements that Plaintiff is **mentally ill.** Plaintiff has never been diagnosed with any mental illness and is a LICENSED MENTAL HEALTH PROFESSIONAL. Both Thomas Donohue and Officer Johnson are aware of Plaintiffs credentials and that there is **no history** to suggest any mental illness. This was an intentional **LIE** to the state court to have the case dismissed. The ruling should be invalid.

Second, the state court did not recognize the violation of Plaintiffs 4th Amendment Right. This is Federal Court domain.

Thomas Donohue and Officer Johnson intentionally lied and slandered Plaintiff and used the Federal Court to justify false statements.

## REMEDY

Plaintiff was asking $15,000. in Damages due to the physical and emotional injuries inflicted when her 4th amendment right was violated. Plaintiff is increasing this remedy to $16,000. to address additional costs and expenses.

Plaintiff is asking this Federal Court to **restrain** Officer Johnson from coming within 20 feet of Plaintiff and **restricting** Officer Johnson from ever entering Plaintiffs home.

Plaintiff, Jody Elliott, states that this complaint is a true account of events and that her 4th Amendment rights were knowingly violated by Officer James Johnson.

Jody Elliott   September 26th 2020

*Jody Elliott LMHC    Sept 26th 2020*
*163 North St*
*Salem MA  01970*