COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                   SUPERIOR COURT DEPARTMENT
                                             Civil Action No.: 1977CV01299B

JODY ELLIOTT,

     Plaintiff,

     v.

OFFICER JOHNSON, S.P.D.,

     Defendant.

## DEFENDANT, OFFICER JAMES JOHNSON'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS UNDER MASS. R. CIV. P. 12(c)

## I.    INTRODUCTION

The Plaintiff's Complaint fails to state a claim of civil assault against Officer Johnson because he is immune from lawsuits under M.G.L. c. 123, §§ 12 and 22.

As a result, the Defendant, Officer James Johnson of the Salem Police Department ("Officer Johnson"), hereby moves this Honorable Court to grant his Motion for Judgment on the Pleadings pursuant to Mass. R. Civ. P. 12(c). The Plaintiff, Jody Elliot, has filed a *pro se* Complaint in which she asserts a civil assault claim against Officer Johnson. Nevertheless, Officer Johnson is immune from suit under M.G.L. c. 123, § 22 for claims arising out of the restraint, transport, or the hospitalization of a person who poses a likelihood of serious harm to herself pursuant to M.G.L. c. 123, § 12. Since the Plaintiff's assault claim arises out of allegations that she was restrained and transported to the hospital, judgment should enter for Officer Johnson.

## II.   **FACTUAL BACKGROUND**

In or around August 2019, Officer Johnson, along with emergency medical technicians ("EMTs") Justin Wilkins and David Manning, responded to a 911 call made by the Plaintiff's daughter, who also acts as the Plaintiff's medical proxy. **Exhibit 1 – Salem Police Department Case/Incident Report, p. 1**; see also Compl., p. 2. Specifically, the Plaintiff's daughter called 911 after finding her mother unconscious due to her extremely low blood sugar. Exhibit 1, p. 1; see also Compl., p. 2. Once Officer Johnson and the EMTs arrived at the scene, however, the Plaintiff's daughter supposedly told them that their response was no longer needed. Exhibit 1, p. 1. That being said, the EMTs still had to perform an in-person evaluation to check the Plaintiff's blood sugar due to the nature of the 911 call. Exhibit 1, p. 1. Things did not go smoothly. At all times during the EMTs evaluation of the Plaintiff, she was "uncooperative, loud, belligerent, and used profane and insulting language." Exhibit 1, pp. 1-2; see Compl., p. 2. In fact, the Plaintiff's behavior was so disruptive and concerning that EMT Wilkins called Medical Control and spoke to Dr. Whitledge as to how to proceed. Exhibit 1, p. 2. After Dr. Whitledge spoke to the Plaintiff on the phone, he made the determination that she must be transported to the hospital. Exhibit 1, p. 2. Significantly, Dr. Whitledge, in particular, believed that she posed a likelihood of serious harm to herself because there was no way to confirm the Plaintiff's blood sugar levels due to her extreme agitated state. Exhibit 1, p. 2.

After the Plaintiff was told that she was going to be transported to the hospital for treatment, she ran into another room and allegedly threw a pillow at the door in an attempt to close it. Compl., p. 3. In response to this erratic behavior, Officer Johnson

entered the room and grabbed the Plaintiff's arm at which point she slapped his hand

away. Compl., p. 3. Officer Johnson subsequently restrained the Plaintiff as he then

proceeded to escort her to the gurney outside of her residence. Compl., p. 3. At that time,

the Plaintiff was transported to the hospital where she was released later that day.

Compl., p. 3.

Based on the foregoing facts, it is clear that the Plaintiff believes that Officer

Johnson assaulted her when he restrained and assisted in transporting her to the hospital.

In light of this belief, the Plaintiff alleges that "[t]his was a crime of opportunity by

Officer Johnson." Compl., p. 1. The Plaintiff then proceeds to discuss her long-time

contentious relationship with Officer Johnson, stating, in relevant part, that:

> "In his *report*[,] Officer Johnson acknowledges that we have a history and
> that I do not trust him … I was falsely charged with a *hate crime* in 2015
> to cover up the acts of a local politician and his cohort Judge Honor Segal.
> The case was dismissed *after much harassment by Officer Johnson* and the
> Salem Police Department. The case went to [the] Federal Appeals Court."

Compl., p. 1 (emphasis added). In doing so, the Plaintiff not only incorporates Officer

Johnson's Police Incident Report into her Complaint, but she also references to a former

action involving Officer Johnson.

## III.   ARGUMENT

### A.   Standard for Motion for Judgment on the Pleadings

Under a Rule 12(c) motion for judgment on the pleadings, the legal sufficiency of

the complaint is challenged by the moving party defendant as to whether there are

genuine issues of material fact in which remain. Welch v. Sudbury Youth Soccer Ass'n,

Inc., 453 Mass. 352, 353 (2009); see Mass. R. Civ. P. 12(c). A motion for judgment on

the pleadings pursuant to Rule 12(c) is "actually a motion to dismiss… [that] argues that

the complaint fails to state a claim upon which relief can be granted." Jarosz v. Palmer,

436 Mass. 526, 529 (2002) (quoting J.W. Smith & H.B. Zobel, Rules Practice § 12.16

(1974)). Rule 12(c) is designed to challenge an opposing party's omission of an essential

element in their pleading. Id. at 530. In considering such a motion, a court must review

all allegations set forth in the complaint, as well as any inferences that may be drawn, as

true and in the non-moving plaintiff's favor. Nader v. Citron, 372 Mass. 96, 98 (1977).

A court will grant a Rule 12(c) motion for judgment on the pleadings "if a plaintiff fails

to present sufficient facts in the complaint to support the legal claims made."

Flomenbaum v. Commonwealth, 451 Mass. 740, 742 (2008) (citing Jarosz, 436 Mass. at

530).

In deciding a Rule 12(c) motion, this Court may consider not only the complaint

itself but also any document attached to or referenced in the complaint, or facts

susceptible to judicial notice. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000)

(citing Mass. R. Civ. P. 10(c)).[1] In addition to the well-pleaded allegations contained in

the complaint, Rule 12(b)(6), which applies the same standard as Rule 12(c), permits the

court to consider matters of public record, orders, items appearing in the record of the

case, and exhibits attached to the complaint. Id. at 486-487; see also Jarosz, 436 Mass. at

529-530 (finding that the lower court did not err in considering materials outside the

pleadings in allowing the defendants' motion for judgment on the pleadings under Rule

---

[1] Moreover, Rule 10 requires that a plaintiff must state his or her claims "in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances," and that when doing so "facilitates the clear presentation of the matters set forth," each claim "shall be stated in a separate count ..." Mass. R. Civ. P. 10(b). Here, the Complaint is a confusing, disorganized narrative that describes wide-ranging alleged conduct, which may or may not be related, that occurred over a period of time by multiple, unrelated individuals.

4

12(c)). This includes the entirety of documents integral to, referenced in, or explicitly relied upon in the complaint, even if they were not attached. See, e.g., Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004) (clarifying that where a "plaintiff had notice of ... documents and relied on them in framing the complaint, the attachment of such documents to a motion to dismiss does not convert the motion to one for summary judgment"). This Court may therefore consider such documents without converting the Rule 12(c) motion into a motion for summary judgment. As such, the facts recited herein are taken from averments of the Plaintiff's Complaint, Officer Johnson's Police Incident Report, as well as court documents and rulings in the Plaintiff's related federal court actions.

Applying this legal standard to the allegations in the Plaintiff's Complaint and the documents sufficiently referenced to therein demonstrate that judgment should enter for Officer Johnson under Rule 12(c).

**B.     Officer Johnson Was Acting Pursuant to M.G.L. C. 123, § 12**

The Complaint must fail because all actions taken by Officer Johnson towards the Plaintiff were made pursuant to M.G.L. c. 123, § 12.

Under M.G.L. c. 123, § 12, a police officer is not required to obtain a warrant or a signed "pink paper" in order to detain and transport a potentially dangerous individual. In fact, section 12 provides, in pertinent part, that:

> In an emergency situation, if a physician, qualified psychologist or qualified pediatric nurse ... is not available, a *police officer*, who believes that failure to hospitalize a person would create a *likelihood of serious harm* by reason of mental illness may restrain such person and apply for the hospitalization of such person ...

M.G.L. c. 123, § 12(a) (emphasis added). While the statute does not define "emergency,"
it does define "likelihood of serious harm" to include "a very substantial risk of physical
impairment or injury to the person [herself] as manifested by evidence that such person's
judgment is so affected that [she] is unable to protect [herself] in the community and that
reasonable provision for [her] protection is not available in the community." M.G.L. c.
123, § 1.

A police officer must have probable cause to believe that a person poses a
likelihood of serious harm to him or herself in order to justify involuntary civil
commitment under M.G.L. c. 123, § 12. Probable cause exists where there are
"circumstances warranting a reasonable belief that the person to be seized does (as
outlined in the statute) have a mental health condition threatening serious harm to
[herself] or others." Ahern v. O'Donnell, 109 F.3d 809, 817 (1997). Specifically, courts
must look at the facts and circumstances within the given officer's "knowledge and of
which he had reasonably trustworthy information." Id. (citing Beck v. Ohio, 379 U.S. 89,
91 (1964)). Moreover, the standard for determining whether probable cause existed is
not affected by subsequent developments, such as a later determination that a person is
noncommitable because he or she does not actually suffer from a serious mental illness.
See id. at 818. In Ahern, the court noted that the Boston police officers knew the plaintiff
had made threats, and coupled with the fact that he had a history of harassment, threats,
and stalking, the police had probable cause to have him hospitalized. Id.

In a similar way, in Winfield v. Town of Andover, 305 F. Supp. 3d 286 (D. Mass.
2018), the court held that the police officers in that case had probable cause to justify
civil commitment of a person who was walking back and forth in a store "talking to

people with her lip injured and needing stitches." Id. at 295. Significantly, after taking into consideration that a community supporter assisted the officers in determining that the person should be hospitalized, the Winfield court determined that the police officer complied with the procedures required under M.G.L. c. 123, § 12. Id.

Here, Officer Johnson had probable cause to believe that the Plaintiff was in serious danger when her daughter called 911 after finding the Plaintiff unconscious due to her low blood sugar. After arriving to the scene, the Plaintiff was, at all times, uncooperative, loud, belligerent and used profane and insulting language. Similar to the police officers in Ahern, Officer Johnson was also aware of the Plaintiff's history of alleged mental illness and disruptive behavior. See Elliot v. Prosniewski et al., 1:16-cv-11750-DLC, at *2 (D. Mass. 2017) (noting that the Plaintiff's previous neighbors "claimed that she was mentally ill and had a long and well documented history of disruptive behavior" in a case in which Officer Johnson was previously involved). In fact, Officer Johnson deliberately chose not to pursue any charges against the Plaintiff because "based on her erratic behavior and medical condition [it is] believed that there was no malicious intent involved in [her] assaults and batteries [against them]." (Exhibit 1, p. 3). Given the fact that there was no way to confirm the Plaintiff's blood sugar levels due to her extremely agitated behavior, coupled with her history of alleged mental illness and disruptive behavior, Officer Johnson had probable cause to hospitalize the Plaintiff pursuant to M.G.L. c. 123, § 12.

Moreover, the facts in this case provide even more justification for involuntary civil commitment than those alleged in Winfield. Unlike the community supporter who supported the officers in Winfield, Dr. Whitledge is an authorized actor under M.G.L. c.

123, § 12 who not only assisted Officer Johnson in determining that the Plaintiff should

be hospitalized, but actually made that medical determination in the first place. Dr.

Whitledge made this determination, and Officer Johnson agreed, because they feared that

the failure to do so would create a serious likelihood of harm for the Plaintiff. As such,

this Court should similarly find that Officer Johnson, like the officers in <u>Winfield</u>,

complied with the procedure required under M.G.L. c. 123, § 12.

Accordingly, Officer Johnson had probable cause to justify restraining the

Plaintiff pursuant to M.G.L. c. 123, § 12.

> ### C.     <u>Officer Johnson Is Immune From Suit Under M.G.L. c. 123, § 22 for Actions Undertaken Pursuant to M.G.L. c. 123, § 12.</u>

The Plaintiff's Complaint must fail because all actions taken by Officer Johnson

were undertaken pursuant to M.G.L. c. 123, § 12 and he is therefore immune from civil

suits for damages under M.G.L. c. 123, § 22.

Recognizing that authorized persons are required to take action against unwilling

and non-compliant individuals under M.G.L. c. 123, § 12, the Massachusetts Legislature

provided a broad immunity for such persons when they act pursuant to chapter 123. Thus,

section 22 provides that:

> Physicians, qualified psychologists, qualified psychiatric nurse mental
> health clinical specialists, *police officer* and licensed clinical social
> workers shall be *immune from civil suits* for damages for restraining,
> transporting, applying for the admission of or admitting any person to a
> facility or the Bridgewater state hospital if the physician, qualified
> psychologist, qualified psychiatric nurse mental health clinical specialist,
> *police officer* or licensed independent clinical social workers acts pursuant
> to this chapter.

M.G.L. c. 123, § 22 (emphasis added). Police officers are immune from civil actions for

damages resulting from the actions they take pursuant to provisions and sections of

M.G.L. c. 123. <u>Ahern</u>, 109 F.3d at 820. The statutory language explicitly provides for

immunity from "civil suits," which supports the proposition that the Legislature intended to preserve the actors enumerated in the statute from the burden of undergoing litigation. In fact, the Supreme Court has stressed the importance or resolving immunity questions "at the earliest possible stage in litigation." Id. at 819-820 (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

In her Complaint, the Plaintiff asserts an assault claim against Officer Johnson, which arises out of the alleged restraint and subsequent transport of the Plaintiff pursuant to chapter 123. As noted above, M.G.L. c. 123, § 12 expressly authorizes a police officer to restrain such an individual pursuant to M.G.L. c. 123. Chapter 123 defines "restraint" as using "bodily physical force, mechanical devices, chemicals, confinement in a place of seclusion other than the placement of an inpatient or resident in his room for the night, or any other means which unreasonably limit freedom of movement." M.G.L. c. 123, § 1.

The Plaintiff's assault claims all relate to the alleged restraint by the Officer Johnson in connection with her eventual transfer to the hospital. Thus, because Officer Johnson was acting pursuant to chapter 123, he is immune from civil suits related to that alleged restraint. As such, the Plaintiff's claims against Officer Johnson fail as a matter of law.

**D.    Officer Johnson is Protected by Common Law Immunity.**

Massachusetts common law immunity protects Officer Johnson from the Plaintiff's claim of assault because based on the facts alleged in the Plaintiff's Complaint, it was reasonable for Officer Johnson to believe that he was required to take action under M.G.L. c. 123, § 12. Massachusetts government employees acting within their discretion as public officials and in good faith are shielded from liability. See Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145-146 (1st Cir. 2016) (discussing how, in

affirming dismissal of intentional tort claims, a public official, exercising judgment and

discretion, is not liable in the making of an official decision if the official acted in good

faith, without malice, and without corruption), citing Nelson v. Salem State Coll.,

446 Mass. 525, 537-38 (2006).

Here, it was reasonable for Officer Johnson to have acted under §12 and take the

Plaintiff into custody based on her actions and his knowledge of the Plaintiff's mental

health history. In fact, Officer Johnson did not pursue criminal charges against the

Plaintiff because he did not believe that she had the mental capacity to commit crimes.

Furthermore, the Plaintiff cannot put forth any evidence to suggest that Officer

Johnson acted in bad faith or with malice by taking the Plaintiff into custody under § 12,

and thus the Plaintiff cannot overcome the presumption that he was doing so in good faith

in carrying out his official duties. See Najas Realty, LLC. v. Seekonk Water Dist., 68

F.Supp.3d 246, 259 (D. Mass. 2014); see generally Hutton v. Superintendent,

Massachusetts Correctional Inst., 45 Mass. App. Ct. 304, 308 (1998) (where law not

clearly established as to plaintiff's rights, defendants enjoyed immunity from suit for

common law claims). As a result, Officer Johnson is immune from the Plaintiff's assault

claim and judgment should therefore enter in his favor.

**E.    This Court Should Be on Judicial Notice That the Plaintiff is Enjoined From Filing Further Lawsuits in Federal District Court.**

The case at bar is at least the seventh action in which the Plaintiff has brought

claims against individuals and entities associated with events that took place in July of

2014. Specifically, these events include the Plaintiff's involvement with her condo

association and the reported hate crime, which she even references to in her Complaint.

Compl., p. 1.

The Plaintiff is so litigious that she was actually enjoined from filing further *pro se* complaints in federal court concerning these events. Elliot v. Segal et al., 1:19-cv-10259-ADB, at *13 (D. Mass. 2019). In deciding to enjoin the Plaintiff from filing further frivolous lawsuits without leave from court, District Judge Allison D. Burroughs briefly recapped all prior actions and dispositions brought by the Plaintiff in this case. Id. at *4-6. In doing so, Judge Burroughs discussed Elliot v. Prosniewski et al., which is also particularly relevant here. Id., No. 16-cv-11750-DLC. In Elliot v. Prosniewski et al., the Plaintiff sued Conrad Prosniewski, the Salem Police Department, the City of Salem, and Salem Mayor Kimberly Driscoll in state court alleging failure to protect, "neighbor dispute," excessive force, police misconduct/malicious prosecution, and selective enforcement. Id. As to her claims of selective enforcement, the Plaintiff alleged that Officer Johnson, among other SPD officers, were unable to assist her further in resolving her neighbor dispute. Id. at *6. The Plaintiff understood this to mean, as nonsensical as it may be, that by favoring her neighbors over her in this dispute, the SPD Officers, including Officer Johnson, violated her Eighth Amendment right to be free from cruel and unusual punishment, and her Fourteenth Amendment right to equal protection under that amendment's Equal Protection Clause. Id. Following a hearing, Magistrate Judge Donald L. Cabell dismissed the complaint on September 14, 2017. Id. at *18. The Plaintiff appealed the order granting the motion to dismiss for failure to state a claim on which relief could be granted, which was subsequently affirmed by the First Circuit.

While the Order enjoining the Plaintiff from filing a new lawsuit in federal district court does not impact her ability to litigate in state court, that does not preclude this Court from exercising its "broad discretion to grant or deny injunctive relief." Lightlab

Imaging, Inc. v. Axsun Technologies, Inc., 469 Mass. 181, 194 (2014).  That being said, the underlying reasons for enjoining the Plaintiff from filing any more *pro se* complaints in federal district court equally apply here.  In particular, the Plaintiff's repeated filing of deficient complaints constitutes just as much of an abuse of the process with respect to this court system as it did with the federal court system.  The Plaintiff's frivolous lawsuits have also now burdened Officer Johnson on more than one occasion.  As such, this Court should take the Plaintiff's prior litigation into serious consideration.

**IV.    CONCLUSION**

WHEREFORE, Officer Johnson respectfully requests that this Honorable Court enter judgment in his favor as to all claims in the Plaintiff's Complaint under Mass. R. Civ. P. 12(c).

Respectfully submitted,
The Defendant,
James Johnson,
By his attorney,

*Thomas Donohue*

Thomas R. Donohue, BBO# 643483
BRODY, HARDOON, PERKINS & KESTEN, LLP
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
tdonohue@bhpklaw.com

DATED: February 3, 2020

12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JODY ELLIOTT,

     Plaintiff,

v.

CONRAD PROSNIEWSKI, SALEM
POLICE DEPARTMENT, CITY OF
SALEM, and MAYOR KIMBERLY
DRISCOLL

     Defendants.

No. 16-cv-11750-DLC

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS (Dkt. No. 13)

Cabell, U.S.M.J

    Jody Elliott (Elliott or "the plaintiff") has brought a *pro
se* civil rights lawsuit against the City of Salem, Massachusetts
("the City"), its mayor, Kimberly Driscoll ("Mayor Driscoll"), the
Salem Police Department ("SPD"), and SPD Captain Conrad
Prosniewski ("Captain Prosniewski") (collectively "the
defendants").  The gravamen of Elliott's complaint is that police
officers repeatedly trivialized or ignored her complaints that
certain neighbors were harassing her, and instead tended to credit
the neighbors' own complaints regarding her.  The defendants move
to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).
For the reasons discussed below, I find that the complaint as

drafted fails to state a viable claim.  The motion to dismiss will therefore be GRANTED.

I.  **FACTUAL BACKGROUND**

The complaint, taken as true for the purposes of the motion to dismiss, arises from an ongoing dispute between the plaintiff and her then neighbors and fellow trustees of her condominium association, Honor Segal ("Segal") and Christopher Patzke ("Patzke").  Segal and Patzke reportedly made false and misleading statements about the plaintiff; among other things, they claimed that she was mentally ill and had a long and well documented history of disruptive behavior during association meetings. (Compl. ¶¶ 7, 9, 17, 35).  Segal and Patzke also reportedly sent the plaintiff threatening emails, blocked her driveway, shut off her electricity, recorded her in her home, and posted on the building's front porch biblical quotes highlighting her failings as a Christian.  (*Id.* ¶¶ 16-19, 21-23, 25, 32-35).

Segal and Patzke at some point alleged to the SPD that the plaintiff had painted a swastika and other Nazi-related insignia in the cellar of the building in order to target Segal, who is Jewish, and Patzke, who is gay.  The SPD under Captain Prosniewski's direction conducted an investigation but failed to seriously investigate the plaintiff's complaints, and credited Segal and Patzke's version of events over hers.  At the conclusion of the investigation the Essex District Attorney's office brought

criminal charges against the plaintiff.  (Id. ¶¶ 27-28, 36, 38, 40, 45, 55-56, 64-66, 90).

## II.  __THE COMPLAINT__

The complaint asserts eight counts.

Count One alleges that the SPD engaged in selective enforcement by failing to protect the plaintiff when she called them in July 2014 to complain about Patzke.

Count Two is entitled "Neighbor Dispute" and summarizes an incident where the plaintiff called the SPD regarding Patzke's car blocking her from exiting the driveway.  The plaintiff appears to allege that a police report summarizing the incident would have militated against charges being filed against her had it been considered.

Count Three is entitled "Excessive Force" and alleges that an SPD officer frightened the plaintiff and her daughter when he and his colleague went to the plaintiff's unit late one evening and banged loudly on her front door.

Counts Four and Five are lumped together and are entitled "Police Misconduct; Disregard for the Truth (and) Malicious Prosecution." They allege that Captain Prosniewski lied to the plaintiff's attorney and caused her to "los[e] her legal representation."  They also allege that Captain Prosniewski told Patzke when the plaintiff would be at the courthouse so he could intimidate her and put her at risk for arrest or harm.

Count Six, like Count One, is entitled "Selective Enforcement" and alleges that the SPD refused to investigate the plaintiff's allegations against Patzke and Segal.

Count Seven is entitled "Failure to Protect" and alleges that SPD Officer Levesque failed to adequately address the plaintiff's complaint following a snowstorm that Patzke was harassing her by moving his car to block the plaintiff's car each time she cleared an area around it.

Count Eight is also entitled "Failure to Protect" and alleges that SPD Levesque on another occasion failed to adequately address the plaintiff's complaint that Patzke had caused damage to the plaintiff's washing machine by moving it from one area of the basement to another.

The court presumes that all of the counts allege constitutional violations and are brought pursuant to 42 U.S.C. § 1983. *See Hamilton v. Arnold*, 135 F. Supp. 2d 99, 102 (D. Mass. 2001) ("Section 1983 provides a federal cause of action to redress violations of the Constitution or other federal laws . . .").

## III. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include sufficient factual allegations that, when taken as true, demonstrate a plausible claim of relief. *Bell Atlantic v. Twombly,* 550 U.S. 544, 555-58 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully."
*Id.* The "plausibility" standard is met where "the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550
U.S. at 556).

When deciding a motion to dismiss under Rule 12(b)(6), the
"plausibility" standard requires the court: (1) to distinguish
between the complaint's factual allegations, which must be
accepted as true, and its conclusory legal allegations which are
afforded no credence, and (2) to determine whether the factual
allegations "are sufficient to support the reasonable inference
that the defendant is liable for the misconduct alleged." *Garcia-*
*Catalan v. U.S.,* 734 F. 3d 100, 103 (1st Cir. 2013). The complaint
should be dismissed only if "the pleading shows no set of facts
which could entitle plaintiff to relief." *Zona v. Clark*
*University,* 436 F. Supp. 2d 287, 288 (D. Mass. 2006).

**IV.** <u>**ANALYSIS**</u>

A. <u>Counts 1 and 6 – Selective Enforcement</u>

The plaintiff alleges that she called the SPD on several
occasions to complain of harassment by Segal and Patzke. When SPD
officers responded, however, they reportedly ignored the
plaintiff's concerns and instead gave preferential treatment to

Segal and Patzke.[1]  More specifically, the plaintiff alleges that SPD Officers Johnson, Verrette, Connolly and Burke, after speaking with her and then with Segal and Patzke, told her the SPD was unable to assist her further in resolving her disputes with them. The plaintiff alleges that the officers favored Segal and Patzke because Segal, who is a former Assistant District Attorney, had a long-standing professional relationship with the SPD.   The plaintiff alleges that the officers' conduct violates her Eighth Amendment right to be free from cruel and unusual punishment, and her Fourteenth Amendment right to equal protection under that amendment's Equal Protection Clause.

As a threshold matter, the Eighth Amendment is not implicated here because its protections apply to prisoners only.  *See Ingraham v. Wright*, 430 U.S. 651, 671-672, n. 40 (1977); *see also Revere v.*

---

[1] In addition to Counts One and Six, the plaintiff advances two other claims against the SPD, including claims for failure to protect (Counts Seven and Eight) and excessive force (Count Three).  The defendants argue that all of these claims fail as a matter of law because the SPD is "a municipal department of the City rather than an independent legal entity that is subject to suit," and such claims should properly be brought against the City or the individual SPD officers responsible for the alleged violations.  The defendants argue, and the Court agrees, that a police department is not an independent legal entity for purposes of the civil rights based claims the plaintiff brings here.  *See e.g., Stratton v. City of Boston*, 731 F. Supp. 42, 46 (D. Mass. 1989) ("[T]he Police Department is not an independent legal entity."); *Henschel v. Worcester Police Dept.*, 445 F.2d 624, 624 (1st Cir. 1971) (noting that the plaintiff could not bring a § 1983 claim against the police department); *Winfield v. Perocchi*, No. 14-12219-IT, 2015 WL 4482940, at *3 (D. Mass. July 22, 2015) (noting that the plaintiff could not bring her claims against the police department directly).  However, as a more efficient alternative to dismissing the claims only to allow the plaintiff leave to amend her complaint to name the proper entities, the court will construe the claims brought against the SPD as though they were alleged against the individual SPD officers and/or, where applicable, the City.

*Mass. Gen. Hosp.*, 463 U.S. 239 (1983); *Carapellucci v. Town of Winchester,* 1986 U.S. Dist. LEXIS 17086 (D. Mass. Dec. 1, 1986) (Eighth Amendment's protections apply "only to prisoners incarcerated pursuant to a criminal conviction.").

To succeed on a claim of selective enforcement based on the Fourteenth Amendment's Equal Protection clause, a plaintiff must show that "(1) [she], compared to others similarly situated, was selectively treated and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato,* 60 F.3d 906, 909-10 (1st Cir. 1995)(*quoting Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen,* 878 F.2d 16, 21 (1st Cir. 1989)).

More specifically, a plaintiff "must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [the plaintiff was] singled . . . out for unlawful oppression." *Rubinovitz,* 60 F.3d at 909-10 (*quoting Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989)). This requires the plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Snyder v. Gaudet,* 756 F.3d 30, 35 (1st Cir. 2014)(*citing Cordi-Allen v. Conlon,* 494 F.3d

245, 251 (1st Cir. 2007)). "[T]he First Circuit considers the similarly situated requirement to be a very significant burden." *Wentworth Precious Metals, LLC v. City of Everett*, No. 11-10909-DPW, 2013 WL 441094, at *8 (D. Mass. Feb. 4, 2013) (*quoting Cordi-Allen*, 494 F.3d at 250-51).

The plaintiff does not meet that burden here.  First, the complaint as articulated fails to allege that an individual or groups of individuals similarly situated to the plaintiff were somehow treated differently by the SPD in general, and by Officers Johnson, Verrette, Connolly and Burke in particular. Rather, the thrust of the plaintiff's complaint appears to be that SPD officers tended to dismiss her concerns.  In the absence of showing that others similarly situated to the plaintiff were treated differently, a plaintiff's selective enforcement claim cannot survive.  *See e.g., Smith v. City of Boston*, No. 03-10062-DPW, 2004 WL 1572626, at *5 (D. Mass. July 13, 2004) (landlord's failure to identity other landlords who were treated differently by the city for code violations was fatal to his selective enforcement claim); but compare *Wright v. Town of Southbridge*, No. 07-40305-FDS, 2009 WL 415506, at *6 (D. Mass. Jan. 15, 2009) (plaintiffs' allegations that "we were the only ones to receive these [2-hour parking tickets]" and that a certain law "was enforced only against [the plaintiffs]," while "threadbare," were sufficient to state a plausible selective enforcement claim).

Even assuming that the complaint could be read to assert that Segal and Patzke were individuals similarly situated to the plaintiff who received disparate, more favorable treatment, such that the first prong were satisfied, the complaint still fails to allege that Officers Johnson, Verrette, Connolly and Burke intended with malice or bad faith to injure the plaintiff.  To be sure, the plaintiff does allege that the SPD tended to favor Segal because she had a longstanding relationship with them, but that is not the same as alleging facts that would show that the SPD or its officers harbored a malicious or bad faith intent to injure the plaintiff.  In that regard, it is also true that the plaintiff alleges that the officers maliciously credited Segal's version of events "with the goal of destroying [the] plaintiff's life," but conclusory statements are insufficient on their own to meet the plaintiff's burden.  Rather, the plaintiff would need to allege facts showing that Officers Johnson, Verrette, Connolly and Burke either knew that Segal's version of events were false but credited them anyway, or knew that the plaintiff's complaints had merit but discredited them nonetheless, because they harbored an intent to injure the plaintiff.  *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 146 (D. Mass. 2006) ("Even if some of the defendants' actions lacked a rational basis and resulted in [the plaintiff] being treated differently from others similarly situated, she has offered nothing to show that the defendants engaged in an

orchestrated and spiteful effort to get her."); *Smith*, 2004 WL
1572626 at \*5 (holding that "pre-existing animosity" between the
plaintiff and the defendants was not sufficient to support a
finding that defendants harbored a malicious intent to injure the
plaintiff).   Given the plaintiff's response when asked at the
hearing on the motion that she simply did not know why the SPD
Officers would treat her differently, she cannot meet her burden.
For this reason, moreover, allowing the plaintiff leave to amend
the complaint to assert such facts would be futile.   Counts 1 and
6 therefore fail to state a viable claim for selective enforcement
and will be dismissed.

   B. Counts 1, 7 and 8 – Failure to Protect

   The plaintiff alleges that she placed several calls to the
SPD regarding Patzke's allegedly threatening and harassing
conduct.   On several of these occasions, SPD Officers Levesque and
Verrette reportedly responded and trivialized the nature of the
plaintiff's dispute with her neighbors as a "civil complaint"
falling outside the SPD's jurisdiction, and allegedly refused to
further protect the plaintiff from Segal and Patzke's campaign of
harassment.   The plaintiff contends that the officers' failure to
adequately address her complaints violates her constitutional
rights.

   The Fourteenth Amendment's Due Process Clause may be violated
where (1) the government affirmatively acts to increase the threat

to an individual of third-party private harm, or prevents the individual from receiving federal assistance, and (2) the government's actions are so "egregious" and "outrageous" as to shock the conscious of the court. *See Irish v. Maine,* 849 F.3d 521, 526 (1st Cir. 2017); *Frances-Colon v. Ramirez,* 107 F.3d 62, 64 (1st Cir. 1997). But where the claim is not that the government affirmatively increased the risk of harm to the plaintiff but, rather, simply failed to protect the individual from third-party private violence (even in the face of a known danger) the conduct simply does not constitute a violation of the Due Process Clause. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 (1989); *Melendez-Garcia v. Sanchez*, 629 F.3d 25, 36 (1st Cir. 2010).

In the present case, there is no allegation that any SPD officer affirmatively acted to increase a threat of violence to the plaintiff. Indeed, there is no serious allegation that the plaintiff was ever at risk of harm by Segal or Patzke. Even assuming for the sake of argument that the police by their reportedly biased treatment fortuitously fostered a culture where Segal and Patzke felt emboldened to continue to harass the plaintiff as alleged, the facts would still not be so egregious or outrageous as to shock the conscience of the court. *See e.g., Morgan v. Town of Lexington*, 138 F. Supp. 3d 82, 90 (D. Mass. 2015) ("Although the Defendants' lack of responsiveness and concern to

11

[the plaintiff's] treatment by fellow students may have been negligent, [e]ven where the government has created or markedly increased a risk of harm, no violation of substantive due process occurs unless the behavior [is] conscience-shocking or outrageous."); *Smith v. Guilford Bd. Of Education*, 226 Fed. Appx. 58, 62 (2nd Cir. 2007) ("Defendant's failure to respond to the harassing and bullying to which [the plaintiff] was subjected . . . while highly unfortunate, does not rise to the level of egregious conduct . . . so brutal and offensive to human dignity as to shock the conscience.").

In short, Counts 1, 7 and 8 fail to state a valid due process claim for a failure to protect.[2]

C. Count 2 - Neighbor Dispute

Count 2 is based on an incident that reportedly took place on September 7, 2014. The plaintiff contends that Patzke was blocking the plaintiff's access to her car and she called the SPD to request assistance in resolving the dispute. SPD Officer Scaldone responded to the scene and ordered Patzke to move his vehicle. In the course of these events, however, Patzke apparently made a deprecating comment to the plaintiff and her daughter out of Officer Scaldone's earshot.

---

[2] The plaintiff contends that Mayor Driscoll also failed to respond timely to her written requests for assistance in resolving her issues with the SPD. To the extent the plaintiff asserts Counts 1, 7 and 8 against Mayor Driscoll for her failure to act, the claims fail for the reasons discussed above.

Accepting these allegations as true, it remains unclear what the thrust of the plaintiff's claim is.   For its part, the court discerns no illegality or improper conduct on Officer's Scaldone's part in resolving the dispute the way he did.   To the extent the plaintiff is heard to respond that she alleges selective enforcement or a failure to protect, the claim fails for the reasons stated above.   Count 2 thus fails to state a claim.

D. Count 3 – Excessive Force

Count 3 arises from an incident that reportedly took place on October 20, 2014.   Officer Verrette and another unidentified officer apparently "forcefully banged" on the plaintiff's door to follow-up on Segal and Patzke's criminal complaint that the plaintiff had painted a swastika and other Nazi-related insignia on a building door.   The plaintiff alleges that Officer Verrette's "loud banging" on her door frightened her and her daughter and constitutes excessive force.

Claims that a police officer used excessive force in an incident arising outside of the seizure/arrest context are analyzed under the Fourteenth Amendment's substantive due process standard.   *Cummings v. McIntire,* 271 F.3d 341, 344 (1st Cir. 2001). The due process protection afforded by the Fourteenth Amendment protects individuals from the "arbitrary action of government," but only conduct that "shocks the conscience" constitutes an arbitrary abuse of power so as to give rise to a violation of an

individual's substantive due process rights. *See Maraj v. Massachusetts,* 836 F. Supp. 2d 17, 28 (D. Mass. 2011).

In the present case, the plaintiff has not cited any authority suggesting that an officer's loud knocking on a person's door without more could be so egregious and outrageous as to shock one's conscience and amount to a due process violation. This court has also not been able to find any authority lending support to the plaintiff's theory. Even accepting that every case is necessarily fact-specific and unique to the particular circumstances in which the conduct occurred, the absence of any supporting precedent is telling. To this court, the facts here would at worst suggest (but not necessarily prove) that Officer Verrette knocked on the plaintiff's door loudly because he wanted to frighten her. Even if such facts could make out a viable claim for infliction of emotional distress, they still would not be so egregious as to shock the conscious and amount to a due process violation. Count 3 therefore fails to state a claim and will be dismissed. *See Baker v. McCollan,* 443 U.S. 137, 146 (1979) (primary inquiry in addressing a Fourteenth Amendment excessive force claim is whether state official's conduct was so egregious or intolerable as to shock the conscience of the court and constitute a constitutional violation as opposed to a mere violation of state tort law).

E. Counts 4 and 5 - Malicious Prosecution

Counts 4 and 5 allege that Captain Prosniewski, who was responsible for formally investigating allegations that the plaintiff had painted a swastika and other Nazi-related insignia on a building door, incorrectly told the plaintiff's attorney that she would receive a court summons in the following weeks when she in fact received it the following day, which in turn (somehow) caused her attorney to withdraw from representing her. The plaintiff also alleges that Captain Prosniewski let Patzke know when the plaintiff was due to appear in court so that he could attend and further harass and intimidate her. The plaintiff contends that Captain Prosniewski's conduct amounts to malicious prosecution.

To prevail on a claim of malicious prosecution, "a plaintiff must establish that [s]he was damaged because the defendant commenced the original action without probable cause and with malice, and that the original action terminated in [her] favor." *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 103 (2006). "In broad brush, an individual may be said to have instituted criminal proceedings against another if he caused those proceedings to be initiated." *Limone v. U.S.*, 579 F.3d 79, 89 (1st Cir. 2009). Generally, this is found where the defendant "induces another person to lodge formal criminal charges," and "exercises a peculiar degree of control over the charging official or adamantly presses

that official to bring a criminal complaint." *Id.* Malice is found where there was no probable cause for the prosecution and the defendant acted with an improper motive or was motivated by malice. *Beecy v. Pucciarelli*, 387 Mass. 589, 593-94 (1982).

Here, there is simply no basis to infer that Captain Prosniewski acted with malice when he reportedly incorrectly told the plaintiff's attorney when her summons would be issued, or when he invited Patzke to attend the plaintiff's upcoming court appearance. Even if there were, the claim still fails because the plaintiff does not allege that Captain Prosniewski initiated the criminal charges against her, or induced the entity that did – the Essex District Attorney's Office – to initiate charges, or that he exercised a degree of control over that office. Rather, the crux of the plaintiff's allegations is that Captain Prosniewski purposely misstated when the summons would be issued, which caused the plaintiff's attorney to withdraw, and then facilitated Patzke's attendance at her initial appearance, which allowed Patzke to harass her all the more. Whatever cause of action such facts might support, a claim for malicious prosecution is not one of them. Counts 4 and 5 thus fail to state a claim and therefore will be dismissed.

F. Claims Against the City of Salem

Finally, even assuming the plaintiff could show one or more SPD officers violated her constitutional rights as alleged in the

foregoing claims, the claims would all still fail against the City. In order to hold a municipality liable for the constitutional violations of one of its employees, the plaintiff must show that a municipal employee violated her constitutional rights and that the municipality was responsible for the violation. *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005). To establish that a municipality is responsible for a violation, a plaintiff must show that the municipal employee acted pursuant to a "policy or custom" attributable to the city, that the municipal policy or custom actually caused the plaintiff's injury, and that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as "deliberate indifference." *Id.* (internal citations omitted). *See also Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978) (municipality can be liable for the constitutional violations of an employee, not on a respondeat superior theory, but because official policy or custom caused the constitutional deprivation); *Bordanaro v. McLeod,* 871 F.2d 1151, 1155 (1st Cir. 1989). Put more simply, in order to hold the City liable for the SPD's conduct, the plaintiff would need to show (1) that the City had in place a "policy or custom" that allowed the SPD to act unconstitutionally, i.e., to selectively enforce the law, to affirmatively exacerbate the risk of harm to an individual, or to use excessive force or induce malicious prosecutions, (2) that the

policy or custom actually led to the constitutional violation that occurred, and (3) that the City was deliberately indifferent to the risk created by its policy or custom.

As discussed above, the complaint does not set forth sufficient facts to show that any SPD officer violated any of the plaintiff's constitutional rights, and any claim against the city would fail for that reason alone. But even assuming the plaintiff could show a constitutional violation, the complaint fails to plead any facts suggesting the City had a policy or custom in place that was responsible for any constitutional violation the plaintiff suffered. On the contrary, the complaint is devoid of any facts that reasonably could be construed as alleging a municipal custom or policy. It follows that the complaint fails to state a valid claim against the City.

**V.   CONCLUSION**

For the reasons stated above, the Defendants' Motion to Dismiss is GRANTED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:   September 14, 2017

**From:** **Michael DiLoreto** michael.diloreto@jud.state.ma.us
**Subject:** Re: July 7 hearing Newbury Superior Court. Elliott vsJohnson
**Date:** July 7, 2020 at 3:10 PM
**To:** jody elliott jody8252@gmail.com
**Cc:** ots@jud.state.ma.us

Dear Ms. Elliott,

In this email, I have generated and produced some information that should help you with requesting a transcript.

Please visit https://www.mass.gov/how-to/order-a-court-proceeding-transcript for information regarding processes, payment, fees, etc. It is the mass.gov website with thorough instructions and procedures.

Secondly, we recommend that you also create an account with For the Record by visiting us.court.fm . On this site, you can check if the audio has been uploaded by the Court of Record to help further streamline the request. If there is no record of the recording on this website, you may need to go the Court of Record to gain access to the audio.

Once you have created an account, you should be able to locate your hearing's audio by searching for the court department, the courthouse and the courtroom where the matter was held, and the date of the hearing.  Once you enter this information, a search will pull up the record for that day with the criteria you have entered.  When you click on the audio, you will see the audio stream showing the time you are listening to and a black bar with playback controls.  Log Notes appear below the controls and will assist you with locating your case.  Once you have located the start and end times of your hearing, click the green "Request Transcript" button which appears directly below the controls on the right.  When you select the request transcript button, a window will open allowing you to enter the start and stop times you have identified  as the audio you are requesting.

The necessary can also be found at: https://macourtsystem.formstack.com/forms/transcript_order_form

Feel free to reach out if you have any further questions or concerns.


Best,

Michael DiLoreto
Transcript Coordinator
Office of Court Management
2 Center Plaza
Boston, MA 02108
617-878-0225
michael.diloreto@jud.state.ma.us

----- Original Message -----
From: "jody elliott" <jody8252@gmail.com>
Cc: ots@jud.state.ma.us
Sent: Tuesday, July 7, 2020 2:59:59 PM
Subject: July 7 hearing Newbury Superior Court. Elliott vsJohnson

Hi,   I am Jody Elliott and I am requesting a copy of the hearing that occurred on July 7th Newburyport Supurior Court. Judge Howe presiding. The c case is Elliott vs Officer Johnson.
I understand a fee is involved and I can pay that by credit card over the phone.  Please contact me as soon as possible.  Thank you
Jody Elliott

ots mailing list
ots@jud.state.ma.us
http://mailman01.jud.state.ma.us/mailman/listinfo/ots

**From:** **Michael DiLoreto** michael.diloreto@jud.state.ma.us
**Subject:** Re: Jody Elliott Transcript
**Date:** August 17, 2020 at 2:14 PM
**To:** jody elliott jody8252@gmail.com
**Cc:** ots Mailing List ots@jud.state.ma.us

Hello Ms. Elliott,

Your order was assigned to court approved transcriber, Marsha Johnson. Her email is marsha@allwritetranscription.com

Best,

Michael DiLoreto
Transcript Coordinator
Office of Court Management
2 Center Plaza
Boston, MA 02108
617-878-0225
michael.diloreto@jud.state.ma.us

----- Original Message -----
From: "jody elliott" <jody8252@gmail.com>
To: "michael diloreto" <michael.diloreto@jud.state.ma.us>
Sent: Monday, August 17, 2020 2:02:09 PM
Subject: Jody Elliott Transcript

Hi,

I received your e-mail on the 11th in which you state someone will be contacting me within a few days. I have not heard from anyone. My number is 978-778-4935.  If you could please remind the individual to call that would be helpful.  Thank you,

Jody Elliott

**From:** **jody elliott** jody8252@gmail.com
**Subject:** Transcript
**Date:** August 18, 2020 at 11:51 AM
**To:** marsha@allwritetranscription.com

Hi,

Marsha,

My name is Jody Elliott and you are transcribing my court record.  As I stated to Michael I only need the first 15 minutes if possible.
You now have my contact information.  Thank you for your help.  Jody

| **JUDGMENT ON THE PLEADINGS** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|
| DOCKET NUMBER<br><br>1977CV01299 | Thomas H. Driscoll, Jr., Clerk of Courts |
| CASE NAME<br><br>Elliott, Jody<br>vs.<br>Johnson, Officer, S.P.D. | COURT NAME & ADDRESS<br>Essex County Superior Court - Newburyport<br>145 High Street<br>Newburyport, MA 01950 |

This action came before the Court, Hon. Janice W Howe, presiding, upon a motion for judgment on the pleadings,

After hearing or consideration thereof;

the Court having allowed defendant's motion for judgment on the pleadings

It is **ORDERED AND ADJUDGED**:

That the complaint be and hereby is DISMISSED.

| DATE JUDGMENT ENTERED<br>08/10/2020 | CLERK OF COURTS/ ASST. CLERK<br>X |
|---|---|

Date/Time Printed:  08-10-2020 16:19:08

SCV117: 07/2016